NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SCHINDLER ELEVATOR CORPORATION, : : : | Civil Action No. 15-5306 (SRC) |
| Plaintiff, : : | OPINION |
| v. : : |  |
| SRC CONSTRUCTION OF WHITE PLAINS, LLC a/k/a/ SRC CONSTRUCTION, : : : : |  |
| Defendant. |  |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Defendant SRC Construction of White Plains, LLC ("SRC") to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, to transfer venue to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), under the doctrine of forum non conveniens. Plaintiff Schindler Elevator Corporation ("Schindler") has opposed the motion.  The Court has considered the papers filed by the parties and proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the Court will grant SRC's motion to transfer the action to the Southern District of New York, and accordingly finds that, in light of the transfer, the motion to dismiss the case for lack of personal jurisdiction is moot.

1

2

I.  **BACKGROUND**

The Complaint alleges the following facts. This breach of contract action arose from the performance of a contract between Schindler and SRC to furnish and install escalators in the Metropolitan Plaza building, located in White Plains, New York. (Compl. ¶ 3.)  The contract was executed on or around February 4. 2013.  (Compl. ¶ 3.)  SRC agreed to pay $572,722.00 for this service, but allegedly only paid $489,000.00 to Schindler.  (Compl. ¶¶ 4-5.)  Accordingly, Schindler alleges that SRC breached the contract by failing the pay the full amount due under the contract, and owes Schindler the amount due plus interest.  (Compl. ¶¶ 6-7.)

Schindler is incorporated in the State of Delaware and has its principal place of business in New Jersey.  (Compl. ¶ 1.)  SRC is incorporated in and has its principal place of business in New York.  (Compl. Ex. 4.6.)

Schindler originally brought this action in the Superior Court of New Jersey, Morris County, on May 18, 2015. SRC removed the action to this court on July 8, 2015, based on diversity jurisdiction [Docket Entry 1].

II.  **DISCUSSION**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  The party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient than the current one.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993). The Third Circuit has held that the transferor court need not have jurisdiction

3

over a defendant to grant a plaintiff's transfer motion under section 1404(a). *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964); *cf. Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (holding that the transferor court need not have jurisdiction over the defendant to transfer a case under 28 U.S.C. § 1406(a)).

The Third Circuit has held that "[s]ection 1404(a) transfers are discretionary determinations made for the convenience of the parties." *Lafferty v. St. Riel*, 495 F.3d 72, 76–77 (3d Cir. 2007). In exercising its discretion, the transferor court must evaluate whether a venue transfer would further the goals of section 1404(a), which are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 616, (1964).

In *Jumara*, the Third Circuit provided a list of private and public interest factors a district court should consider when deciding a motion to transfer.  The private interest factors are: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (only to the extent that the files could not be produced in the alternative forum). *Id.*  The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

### A. Private Interest Factors

The first two factors, the forum preferences of the parties, favor a transfer to the Southern District of New York overall. Schindler plainly prefers the District of New Jersey as the litigation forum, and the corporation is at home in New Jersey given that its principal place of business is in Morristown, New Jersey. SRC prefers the Southern District of New York as a forum. These considerations balance out, although the Court recognizes that Schindler's choice of forum is entitled to deference unless the other factors strongly favor transfer. *See, e.g.*, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  A plaintiff's choice of forum, however, deserves little deference when the chosen forum has little connection to the facts underlying the claims. *See, e.g.*, *Wm. H. McGee & Co. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 290 (D.N.J. 1997). In this case, the breach of contract claim revolves around the construction project in White Plains, New York. These facts have little, if any, relationship to New Jersey.

The third private interest factor, whether the claim arose elsewhere, also supports a transfer of the case to the Southern District of New York. The claim in this case, breach of contract, arose out of performance of a construction contract in the Southern District of New York. Schindler claims that emails exchanged between the parties, where one party may have been located in New Jersey, creates a sufficient locus such that this Court should retain this case. But the Court does not find this logic persuasive considering the nexus of facts linking the breach of contract to the Southern District of New York as a forum.

 The fourth factor, the convenience of the parties as indicated by relative physical and financial condition, is neutral or may slightly favor transfer. By its own admission, Schindler is the North American subsidiary of one of the world's largest elevator and escalator companies.

5

SRC is an LLC comprised of two members, and likely does not have the same types of resources to litigate an action as Schindler. Neither party has directly made representations as to financial hardship that would be suffered from litigating in a non-preferred forum, so the Court will not give this factor great weight in its analysis.

The fifth factor, the convenience of witnesses, is neutral in this case. The Third Circuit has held that convenience of witnesses is a factor to be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. SRC identified representatives of the Project Developer WP Hotel and Metro Plaza, with offices in White Plains, who will testify at trial. But SRC has not identified any witnesses who could not be produced in the present forum, nor argued that some of these individuals would not be under the control of the parties to this action. Furthermore, as Schindler has noted, the current and proposed forums are within fifty miles of each other, meaning that witnesses in White Plains, New York would be within the subpoena power of this Court. *See* Fed. R. Civ. P. 45(b)(2)(B) (providing that a subpoena issued by a district court "may be served at any place . . . outside that district but within 100 miles of the place specified for the deposition, hearing, trial production, or inspection."). Similarly, there is no reason to believe New Jersey witnesses would not be available for a trial in New York, considering that Morristown is within 100 miles of White Plains.

Finally, the location of records pertinent to this case is a neutral factor in this case. The location of books and records is a factor to be considered only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. SRC has stated that documents, drawings, and permits are located in White Plains, New York, but there is no reason

to conclude that these documents could not be made available in New Jersey (or vice versa for any documentation for Schindler that is currently in New Jersey).

SRC has demonstrated that there is a very tenuous connection at best between Schindler's choice of forum—New Jersey—and either the wrongdoing underlying this action or the party against which it seeks recovery. The private factors in this case weigh in favor of transfer to the Southern District of New York.

### B. Public Interest Factors

The public interest factors strongly support this Court's conclusion that the Southern District of New York would be a more appropriate forum for this action. The enforceability of the judgment, court congestion, and public policy are neutral factors in this analysis, and neither party has strongly disputed this point. A court in New York may have more familiarity with the application of New York law than this Court does, but the Court does not find this factor to weigh strongly in favor of transfer because this Court regularly applies the laws of other states in diversity jurisdiction.

Two public interest factors, however, strongly support the transfer of this action to the Southern District of New York: practical considerations relating to the litigation of this case, and the consideration of keeping local interests in local courts.

### 1. Practical Considerations Related to Litigation

Practical considerations relating to the litigation of this case are brought to the forefront by SRC's argument that Schindler cannot establish personal jurisdiction over him in the District of New Jersey. The Third Circuit has held that where there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the

action to another district in which the action could have clearly been brought. *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981); *see also Societe Novelle Generale de Promotion v. Kool Stop Int'l, Inc.*, 633 F. Supp. 153, 155 (E.D. Pa. 1985) (following *Schwilm* and granting section 1404(a) transfer, reasoning that "[i]f the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought.").

Here, the Court must contend with the type of personal jurisdiction issue that can be avoided by transfer of the action to a venue where SRC is located and is at home. As SRC has asserted with regard to the question of jurisdiction, it is now and has been at all relevant times a resident of New York. Nevertheless, New Jersey's long-arm statute permits the exercise of jurisdiction over a non-resident defendant to the extent allowed by the Due Process Clause of the Constitution. N.J. Court Rule 4:4-4(c); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992); Fed. R. Civ. P. 4(k)(1)(A) (providing that a federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). It is well established that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

In conducting a minimum contacts analysis, the Court must determine if the defendant's contacts with the state are sufficient to support general or specific jurisdiction. A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the forum

8

state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). This Court agrees with SRC's assertion that on the facts pled, no general jurisdiction exists over SRC in this case, and Schindler has not disputed this point. In the absence of general jurisdiction, *in personam* jurisdiction is dependent on the presence of specific jurisdiction over the defendant: "when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Specific jurisdiction analysis should be tied to the claims at issue in a case, and for contract disputes the court should determine whether the defendant's contacts with the forum "were instrumental in either the formation of the contract or its breach." *Id.* (citing *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999)). Parties who "'reach out beyond [their] state and create continuing relationships and obligations with citizens of another state' are subject to the regulations of their activity in that undertaking." *Id.* (quoting *Burger King*, 471 U.S. at 473 (quotations omitted)). The mere fact that a non-resident of the forum state has contracted with a resident of the forum state is not enough to establish personal jurisdiction, but the required contacts may be established from the terms of the contract, where the negotiations occurred, the future consequences of the contract, or the overall course of dealings between the parties. *Burger King*, 471 U.S. at 479.

Mail and telephone calls sent by a defendant into a forum state may count towards the minimum contacts that support jurisdiction. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir. 1990). But email, telephone calls, or mail do not trigger personal jurisdiction if they "do not show purposeful availment" of the forum state. *Toys R Us Inc v Step Two SA*, 318 F.3d 446, 455

(3d Cir. 2003) (quoting *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d Cir. 1993)).  A district court following this logic found that the exchange of three emails between the plaintiff and defendant regarding the contents of the defendant's web site, without more, did not "amount to the level of purposeful targeting required under the minimum contacts analysis." *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999); *see also Machulsky v. Hall*, 210 F. Supp. 2d 531, 542 (D.N.J. 2002) (holding that minimal email correspondence, "by itself or even in conjunction with a single purchase, does not constitute sufficient minimum contacts.").

The main point of contention between the parties is whether the emails exchanged between Schindler and SRC prior to signing the contract at issue are sufficient minimum contacts such that this Court can exercise personal jurisdiction over SRC. Schindler contends that SRC initially targeted Schindler's employees in Morristown, New Jersey with an email solicitation requesting a proposal from Schindler, and that subsequently SRC made contact by email and telephone with Schindler employees located in New Jersey.  SRC disputes that it made first contact with Schindler.  SRC also asserts that Schindler's office in White Plains, New York ran the project arising from the contract, and further notes that it does not undertake any kind of activity in New Jersey.  SRC maintains that it did not purposefully establish any contact with New Jersey relating to the breach of contract dispute in litigation, and thus that it is not subject to personal jurisdiction in New Jersey.  On these facts, SRC has raised a legitimate question as to whether this Court has personal jurisdiction over it.

This case presents a situation in which the operative facts have only a tenuous connection to New Jersey.  Here, the Court faces precisely the type of personal jurisdiction issue which may

10

be avoided by transfer of the action to the Southern District of New York.  In contrast, proceeding with the action in the District of New Jersey would require this Court to resolve the personal jurisdiction issue, at the expense of the litigants' time and money as well as the Court's own resources.  Moreover, the bona fide dispute over *in personam* jurisdiction calls into doubt the parties' ability to obtain a speedy, full and final resolution of Schindler's claims in the District of New Jersey.  A section 1404(a) transfer to an appropriate venue where this doubt is removed serves to prevent wasteful litigation draining to both the private parties involved in this suit and to the public, which has an interest in the efficient and effective use of the courts.  Thus, practical considerations regarding the litigation of this action militate strongly in favor of transfer to the Southern District of New York.

### 2.  Local Interests in Local Courts

The Court briefly notes that in general, courts have an interest in deciding local controversies, and consequently, when an action "involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 201 (E.D. Pa. 2008) (quoting *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 195 (E.D.N.Y. 1994)).  The alleged injury in this action arose from a breach of contract in the Southern District of New York, and thus this factor also supports the transfer of this action to that district.

For the reasons set forth above, SRC has carried its burden of demonstrating that the Southern District of New York is a more convenient venue than the District of New Jersey for the litigation of this action.  The Court concludes that a transfer would serve the interests of justice and further the goals of 28 U.S.C. § 1404(a).

11

**III. CONCLUSION**

For the foregoing reasons, the Court will grant SRC's motion to transfer venue, and in its discretion, it will order this action transferred to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404. To the extent SRC's motion seeks dismissal of the claims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of *in personam* jurisdiction, the Court will deny that portion of the motion as moot. An appropriate Order will be filed.

                                                                s/Stanley R. Chesler
                                                               STANLEY R. CHESLER
                                                               United States District Judge

Dated: October 23, 2015